Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1447 | **DATE** | 11/2/2000 |
| **CASE TITLE** | Central States Pension Fund vs. Groesbeck Lumber & Supply | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, plaintiff's motion for summary judgment (40-1) is granted as liability on its complaint and on Counts 1 and 3 of Groesbeck's counterclaim, and is otherwise denied. Defendant's motion for summary judgment (37-1) is denied. The case is set for status on 11/17/00 at 9:30 for presentation of an agreed judgment order if possible, or if not for the purpose of advising the Court how it should proceed to determine the appropriate amount of damages.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 03 2000 date docketed | |
| ✓ | Docketing to mail notices. | | | 44 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR6 | courtroom deputy's initials | 00 NOV -2 PM 3:02 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CENTRAL STATES, SOUTHEAST AND )
SOUTHWEST AREAS PENSION FUND )
and HOWARD McDOUGALL, Trustee, )
                                )
        Plaintiffs,              )
                                )
vs.                              )   Case No. 99 C 1447
                                )
GROESBECK LUMBER & SUPPLY, INC., )
                                )
        Defendant.               )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Central States, Southeast and Southwest Areas Pension Fund brought this action against Groesbeck Lumber & Supply, Inc., to collect pension contributions which the Fund claims are owed for the period of 1983 through 1998. Groesbeck contends that it owes nothing because the collective bargaining agreements covering its employees for that period excluded employees hired after January 1983 from participation in the Fund. Both parties have moved for summary judgment.

1.  **Contract Interpretation**

Resolution of the parties' motions turns on the Court's construction of the collective bargaining agreements. "The starting point for the interpretation of any contract is, of course, the language itself." *Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 403 (7th Cir. 1998).

1



a.  **The relevant contract language**

The collective bargaining agreements (CBAs) between Groesbeck and the Union representing Groesbeck employees covering the periods from 1983-1986 and 1986-1989 contained a provision entitled "Probationary Employee New Hires," which stated as follows:

> Section 1. & 2.  New hires, whether experienced or not, may be paid in accordance with Page 11 - Hourly Rate for New Hires.  This status will remain for the length of the contract.  There will be no health and welfare contributions, pension contributions, vacation pay, holiday pay, anniversary pay, birthday pay, personal day pay, bereavement pay, etc.  The above employee will not have any seniority rights whatsoever, and shall be considered probationary employees for a period of thirty (30) months from the date of hire.
>
> Section 3.  The employer may terminate the employment of any probationary employee at any time within the first 30 months of employment and such termination shall be without recourse.

The parties included the same or similar language in every subsequent CBA.  The CBA covering the period from February 1, 1989 through January 31, 1992 contained an identical provision, except that the probationary period in that CBA was 24 months instead of 30.[1]  In the CBAs covering the period from February 1, 1992 through January 31, 1995 and February 1, 1995

---

[1] Groesbeck argues that the 1989-92 contract provided for a 30 month period.  The evidence it offers to support this, however, is not sufficient to create a genuine issue of fact.  The statement of Groesbeck's president Robert Matuja in an affidavit that the contract had a 30 month period does not do the trick; Matuja is talking about the contents of a document, the best evidence of which is the document itself.  And here the document clearly provided for a 24 month period.  Matuja attempts to support his statement with a letter from the Union that attaches a page providing for a probationary period of 12 months, crossed out and replaced with the figure 30.  The letter, however, is dated September 2, 1992, seven months after the 1989-92 contract had expired.  These documents cannot reasonably be read as indicating that the parties were changing an already-expired contract (indeed the contract page attached to the letter could not have come from the 1989 contract, which no one says ever provided for a 12 month period even in draft form).  Rather, the only reasonable reading is that the change was being made to the contract then in effect – namely the 1992-95 contract.

2

through January 31, 1998, the parties reinstated the 30-month probationary period. The only other change was in the title: the parties called this article simply "Probationary Employees."

**b.     Analysis**

Groesbeck argues that its Collective Bargaining Agreement absolved the company from *ever* having to pay any fringe benefits, including pension contributions, for employees hired after February 1, 1983. It bases this argument primarily on the language of the contract, which it says unambiguously creates permanent "new hire" status for employees hired after that date and says that no pension contributions are required for "new hires." The Fund also contends that the contract language is unambiguous but argues that under that language, Groesbeck was required to make pension contributions for any employee that remained after the probationary period of 30 months (24 months during the 1989-92 period). In fact it appears that Groesbeck made contributions for some employees who remained after their probationary period, but only those who opted for Union membership.

If the language of a contract is unambiguous, its meaning may be determined as a matter of law. *E.g., Illinois Conference of Teamsters & Employers Welfare Fund v. Mrowicki*, 44 F.3d 451, 459 (7th Cir. 1994). A contract is ambiguous if the parties' differing interpretations are both reasonable. *Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 565 (7th Cir. 1995). A collective bargaining agreement must be read "to give effect to all of its provisions and to render them consistent with each other." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995).

Groesbeck's proposed construction of the contract – as providing for permanent "new

hire" status for anyone hired after January 1983 – is not reasonable.[2] Nothing in the CBAs suggests that the new hire status stuck with an employee during the entire time he or she was employed by Groesbeck. Moreover, that interpretation writes out of the CBA the provision that new hire status "will remain for the length of the contract." Groesbeck contends that the reference to "length of the contract" means not just the particular contract then in effect but any later CBAs that succeeded the existing contract. But that is contrary to the plain meaning of the term "contract." Though the CBAs permitted an extension beyond three years, see Art. XXXIX, Groesbeck and the Union instead chose to write (and as best we can tell to negotiate) a new CBA as each three year term expired.

The Fund's interpretation of the CBA language, in contrast to that of Groesbeck, gives full effect to the contract's expressed intent that new hire status and probationary status are essentially one and the same, at least for purposes of pension contributions. Article XXII of the 1983-86 CBA specifically provided that pension contributions would be made for each regular full-time employee who had completed his probationary period. Though the parallel provision in later versions of the CBA eliminated the reference to completion of the probationary period, stating instead that pension contributions would be made for each regular full-time employee after he had worked for 31 days, the parties evidently chose to treat the reference to "regular full-time employees" as including only those who had completed their probationary status.[3]

---

[2] Indeed, Groesbeck itself did not follow this interpretation prior to the institution of this lawsuit, as it made pension contributions for Union members once they had been employed beyond the 30 month probation period.

[3] By going along with the "probationary period" interpretation for so many years, the
(continued...)

4

Actually there is another plausible interpretation of the contract, but not one that helps Groesbeck – indeed it would be more favorable to the Fund than the interpretation that the Fund urges on the Court. The reference to "new hire" status lasting "for the length of the contract" could be read to mean that once a particular CBA expired and a new CBA was executed, a new hire who had been hired during the old CBA would no longer be a new hire under the new CBA and therefore that fringe benefits, including pension contributions, would be required for that employee(assuming the employee otherwise satisfied the requirements for covered employees). In some cases this would mean that pension contributions would be required before the employee had completed his probationary period. But we see no reason to adopt or rely upon an interpretation of the contract that the party it would benefit (the Fund) is not urging. In its summary judgment papers, the Fund makes it clear that it is contending that pension contributions are required only after the employee has completed his probationary period, and not at any earlier date.

Based on the above construction of the CBA, the Court concludes that the Fund is entitled to summary judgment as to liability on its claim against Groesbeck and that Groesbeck's summary judgment motion must be denied, unless the Fund's claims are barred by the statute of limitations.

## 2.  Statute of Limitations

The parties disagree as to the appropriate statute of limitations for actions to recover

---

[3](...continued)
Fund waived any contention that contributions were due for *all* employees, probationary or otherwise, who had worked for more than 31 days. *See Central States, Southeast & Southwest Areas Pension Fund v. Ekco Products, Inc.*, 581 F. Supp. 374, 378 (N.D. Ill. 1984).

delinquent contributions under 29 U.S.C. §1132. Groesbeck argues that the Court should apply either the MPPAA's (Multiemployer Pension Plan Amendments Act of 1980) six-year or three-year limitations period (29 U.S.C. §1451) or Michigan's six-year statute of limitations for breach of contract. The Fund argues that the Court should apply Illinois' ten-year statute of limitations. The Court agrees with the Fund. *Central States, Southeast & Southwest Areas Pension Fund v. Jordan*, 873 F.2d 149 (7th Cir. 1989), which is still the law in this Circuit, instructs that when fund trustees seek delinquent employer contributions owed to a multiemployer benefit fund based in Illinois, the Court should apply the Illinois statute of limitations for written contracts (735 ILCS 5/13-206). *See also Chicago District Council of Carpenters Pension Fund v. Cotter*, 914 F. Supp. 237, 241 (N.D. Ill. 1996).

This does not end the statute of limitations analysis; the Court must still decide when the ten-year clock started to tick, i.e., when the cause of action accrued. As a matter of federal common law, *see Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1138 (7th Cir. 1992), the Fund's claim for delinquent contributions accrued when, in the exercise of due diligence, it would have become aware of the failure to pay. *Id.* at 1139; *Michigan United Food & Commercial Workers Unions & Drug & Mercantile Employees Joint Health & Welfare Fund v. The Muir Company, Inc.*, 992 F.2d 594, 597-98 (6th Cir. 1993).

Because the Fund's claim is that Groesbeck failed to make pension contributions for some employees who had completed their probationary period, the issue is whether the Fund knew prior to March 4, 1989 (ten years before filing suit), or in the exercise of due diligence should have known by that time, that Groesbeck failed to make such contributions. There is little doubt that the Fund knew as early as December 1998 prior to that date that Groesbeck's CBA did

not conform to the Fund's own standards (which required contributions for employees after they had been on an employer's payroll for 30 days), but that is not the same as knowledge that Groesbeck was not making contributions even after employees had completed the probationary period under the CBA. Groesbeck has offered no evidence that the Fund actually knew prior to March 4, 1989, and it has no basis to claim that the Fund should have known of the default prior to that date. In its periodic filings with the Fund, Groesbeck certified that its representations regarding the employees for whom contributions were owed were true and correct. Groesbeck offers nothing to suggest that anything was brought to the Fund's attention that should have clued it in that these representations were wrong, and no authority for the proposition that the Fund should have disbelieved Groesbeck and checked for itself. In sum, there is no evidence from which a reasonable fact finder could find in Groesbeck's favor on its statute of limitations defense.

Groesbeck argues that the Fund lulled it into believing that the manner in which it was making pension contributions was acceptable. But without some basis to suggest that the Fund knew Groesbeck was not making contributions for all its non-probationary post-1983 hires, no estoppel can arise. The fact that the Fund may not have objected to the fact that the 30-month probationary period did not conform to the Fund's own requirements does not help Groesbeck, for the Fund is not seeking to recover contributions for employees who failed to complete the probationary period. Groesbeck's estoppel defense therefore fails, even assuming such a defense can be asserted in a suit of this type. Its defense of waiver is also without merit, for the same reason: there is no evidence that the Fund was aware that Groesbeck was only making contributions for some of its non-probationary employees.

7

### 3. The Amount of Damages

Given the Court's interpretation of the CBAs, the Fund is entitled to recoup some amount of delinquent contributions from Groesbeck. We are not able to determine from the parties' current submissions, however, whether the amount sought by the Fund is accurate, or just as importantly whether it can be considered not to be genuinely disputed. It appears that the Fund is seeking contributions from the following employees, all of whom started with the company after February 1, 1983: Steve Ellcey, Christopher Fletcher, David Heath, Donald Jones, Paul Miller, Roger Neal, and Roger Piper, as well as (possibly) Leonard Jacobs, Bruce Limpert, Francis Osebold, and John Pellerito. There is some suggestion in Groesbeck's materials that it disputes whether one or more of these employees worked a sufficient number of hours to be considered a regular as opposed to a temporary employee. Rather than attempting to sort this out from the records that the Fund has submitted, it makes more sense to have the parties, in the first instance, try to come up with the appropriate figures in view of the Court's interpretation of the CBA.

With respect to damages, two other issues potentially come into play: Groesbeck's refund/restitution claim and its setoff claim.

#### a. Groesbeck's refund/restitution claim (Count 1 of the counterclaim)

In its claim for restitution, Groesbeck argues that it is entitled to a refund from the Fund of any money it paid on behalf of the "new hire" employees because if, as the Fund alleges, the CBA truly violated the Fund's policy, the Fund should never have accepted the contributions in the first place. That may be true, but to grant Groesbeck the relief it requests here would harm the employees on whose behalf Groesbeck contributed–at least some of whom are apparently

8

already collecting benefits under the Fund's plan–and would unfairly harm the Fund. Moreover, having concluded that Groesbeck was obligated under the CBA to pay pension contributions as set forth above, the Court finds that Groesbeck is not entitled to a refund of contributions that were made consistent with this interpretation of the CBA.

### b. Groesbeck's setoff claim (Count 3 of the counterclaim)

In Count 3 of its counterclaim Groesbeck seeks a setoff or offset against any amount the Court finds it owes to the Fund; the setoff, according to Groesbeck, should be the amount of all contributions Groesbeck made to its Money Purchase Plan for the relevant employees. Having found that Groesbeck was required–at some point–to contribute to the Fund on behalf of the employees, the Court cannot allow the setoff claim. The fact that Groesbeck may have set up another way to provide benefits (and because participation in the Money Purchase Plan required an employee to be with the company for two years it is not at all clear that the two plans provided parallel benefits) does nothing to lessen the extent to which Central States' fund would be depleted if the Court ordered Central States to pay money out to Groesbeck. *See Roofers Local Union No. 81 v. Wedge Roofing, Inc.*, 811 F. Supp. 1398, 1401 (N.D. Cal. 1992); *O'Hare v. General Marine Transport Corp.*, 564 F. Supp. 1064, 1072 (S.D. N.Y. 1983); *Local 9, International Union of Operating Engineers, AFL-CIO v. Siegrist Construction Co.*, 458 F.2d 1313, 1316 (10th Cir. 1972).

### Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment [#40-1] is granted as to liability on its complaint and on Counts 1 and 3 of Groesbeck's counterclaim (Count 2 was previously dismissed), and is otherwise denied. Defendant's motion for summary judgment

[#37-1] is denied. The case is set for status on November 17, 2000 at 9:30 a.m. for presentation of an agreed judgment order if possible, or if not for the purpose of advising the Court how it should proceed to determine the appropriate amount of damages.

MATTHEW F. KENNELLY
United States District Judge

Date: November 2, 2000